**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

UNITED TRANSPORTATION UNION
LOCAL 418, BURLINGTON SYSTEM
DIVISION OF THE BROTHERHOOD
OF MAINTENANCE OF WAY
EMPLOYES, BURLINGTON
NORTHERN SYSTEM FEDERATION
OF THE BORTHERHOOD OF
MAINTENANCE OF WAY
EMPLOYES, and WILLIAM DHANA,

        Plaintiffs,

vs.

JOSEPH H. BOARDMAN,
ADMINISTRATOR OF FEDERAL
RAILROAD ADMINISTRATION,
MARY E. PETERS, SECRETARY OF
THE DEPARTMENT OF
TRANSPORTATION, and THE
UNITED STATES OF AMERICA,

        Defendants.

No. C07-4100-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION TO
DISMISS, OR IN THE
ALTERNATIVE, MOTION FOR
SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. FOIA Request* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B. Rulemaking Petitions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. **PROCEDURAL BACKGROUND AND PARTIES' ARGUMENTS** . . . . . . . . 7
  A. *The Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  B. *Motion To Dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  C. *Defendants' Supplement* . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  D. *Plaintiffs' Resistance* . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  E. *Defendants' Reply* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV. **LEGAL STANDARDS AND ANALYSIS** . . . . . . . . . . . . . . . . . . . . 10
  A. *Rule 12(b)(1) Motion To Dismiss For Mootness* . . . . . . . . . . . . . . . . 10
  B. *Claims For Attorney Fees And Costs* . . . . . . . . . . . . . . . . . . . . 18
  C. *Remaining Issues* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V. **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I. INTRODUCTION

Over four years ago, the four captioned Plaintiffs and several others filed a related but different complaint in this court against the Burlington Northern Sante Fe Railroad Company (BNSF). *Bauer v. Burlington N. Sante Fe R&R Co.*, No. 03-CV-4110-DEO. The plaintiffs to the complaint alleged they were victimized by BNSF "for demanding compliance with governmental and industry safety requirements." *Id.* (Dkt. # 69). In short, the plaintiffs sought to hold BNSF accountable for BNSF's alleged failure to follow prescribed railroad safety requirements. That action is still pending.

In connection with the rail safety concerns expressed in *Bauer*, Plaintiffs in the instant action "caused to be initiated" one Freedom Of Information Act (FOIA) request and three petitions for rulemaking upon the Federal Railroad Administration (FRA). Dkt. # 2. Plaintiffs' complaint in the instant action alleges the FRA violated the Administrative Procedure Act (APA) and the FOIA by failing to timely respond to the petitions for rulemaking and FOIA request. Plaintiffs want the court "to remedy the failures of [the

FRA] to obey prescribed non-discretionary statutory and regulatory requirements" by entering declaratory and injunctive relief against Defendants. Dkt. # 2. Currently before the court is Defendants' motion to dismiss all claims. Dkt. # 13.

## II. FACTUAL BACKGROUND

### A. FOIA Request

On February 13, 2007, Harry Zanville mailed a FOIA request to the FRA. Zanville is not a party plaintiff to the present action.[1] Zanville requested information and documents under at least twenty-six separate items in six categories. The six categories were: "Outcomes of FRA investigations into complaints of violations of Hours of Service Act, if any;" "Training materials for FRA and state inspectors;" "Information related to Bauer v. BNSF case;" "FRA policies related to NTSB investigations;" "RLA related FRA issues;" and "Touhy restrictions against ex-FRA employees as witnesses in court cases involving complaints about the FRA." [Def. App. 66-68]. As a specific example, his first FOIA request was for the FRA to "[p]rovide a copy of all complaints received by the FRA for the past ten years that rail workers had violated or been required to violate the Hours of Service ("HOS") requirements." [Def. App. 66]. Zanville also requested the FRA to waive the fee for his FOIA request.

The FRA received Zanville's request on February 20, 2007, and on the same day the FRA replied to Zanville. The FRA's letter informed Zanville that his FOIA request

---

[1] The court does not know how Zanville is related to the issues in this case, other than his filing of the FOIA request and petitions for rulemaking. Zanville is not listed as a party, and while he signed the complaint, he did not list a license number. Although the court knows that Zanville used to practice in this district, the complaint indicates Zanville now lives in San Diego, California.

had been assigned a FRA file number, and "that the FRA is currently experiencing a high number of FOIA requests and is addressing backlogged requests with all due diligence on a first-in, first-out basis." [Def. App. 70]. The letter continued, "Your request will be addressed in the order it was received. We regret any inconvenience caused by the delay." [Def. App. 70].

In late February 2007, FRA's FOIA Coordinator, Denise Kollehlon, had brief telephone conversations with Zanville. They discussed matters unrelated to the substance of Zanville's FOIA request, but then on April 27, 2007, Kollehlon spoke with Zanville about the status of the FOIA search. At this time, Zanville informed Kollehlon that he had sent another FOIA request, but Kollehlon informed him that the FRA had never received it. [Def. App. 95].

On December 10, 2007, the FRA sent Zanville a letter denying his fee waiver request and asking that, prior to the FRA searching for his requested documents, Zanville prioritize his request and indicate any willingness to pay the applicable fees. Zanville responded in a letter dated December 16, 2007. The introductory paragraph states:

> Your 12/10/07 letter demonstrates that the FRA switched its strategy from "we won't acknowledge your existence" to "we won't cooperate with you." FRA's switch of tactics is motivated by the APA/FOIA lawsuit we filed. No one will be fooled by it.

[Def. App. 73]. The letter then restated Zanville's request for documents in summarized terms, and requested the FRA to "make serious efforts to cooperate with us." [Def. App. 75].

The FRA then responded to Zanville's FOIA request in a letter dated February 5, 2008. The nine-page letter was written by William Fashouer, Chief Counsel for the FRA. The letter begins:

> First, I want to clarify that my December 10, 2007 letter was not sent in response to the filing of the complaint in *United Transportation Local Union 418 v. Joseph H. Boardman et al.* I first learned of the litigation on December 13, 2007[,] several days after our FOIA response was sent. Our response was based upon the conclusion that your request involved a considerable volume of material and a lengthy search and redaction process for which you had neither offered a willingness to pay nor substantiated a fee waiver request.

[Def. App. 76]. The letter provided a detailed explanation of the FRA's records holdings, which searches failed to yield responsive records, and why any search for additional requested documents would be very time consuming. [Def. App. 76-85]. The letter was also accompanied by over 150 pages of responsive documents. The letter explained that the search took over two hours to perform and only $25.00 was assessed to Zanville to pay for the search. Finally, the letter informed Zanville that he could administratively appeal the FRA's determinations.

## B. Rulemaking Petitions

In mid-May of 2007, the FRA received a document from Zanville and Charles Collins,[2] who claimed to represent "the interests of railway workers, property owners, railroad corporation shareholders, and members of the public." [Def. App. 2]. The document was entitled a Petition for Rulemaking, but the FRA docket clerk, Michelle Silva, did not recognize its format and its processing was delayed. The petition concerned the FRA's regulations regarding "human factors." The Human Factors Petition (HF

---

[2] Collins, like Zanville, is an enigmatic character in this suit. Collins is not named as a party plaintiff, but he apparently is an attorney practicing in Minnesota. Collins also signed the complaint.

Petition) did not include a return address, although the envelope included a stamp stating, "City Front Terrace HOA." Silva managed to find out online the address for the City Front Terrace Home Owners Association, and also learned that Zanville was on the HOA's board. As a result, Silva contacted the Department of Transportation (DOT) Docket Office to request that a docket be opened for the HF Petition.

On May 31, 2007, Zanville and Collins sent an email to FRA's general email address seeking confirmation of two rulemaking requests, one on track inspection and the other on human factors. Silva then spoke to Collins over the phone sometime between May 31st and June 5th. Silva informed Collins that the FRA had only received one rulemaking petition, the HF Petition, which did not include sufficient contact information to respond with an acknowledgment of receipt. Collins provided Silva with Zanville's contact information. Silva then instructed Collins how to properly file a petition for rulemaking. Zanville called subsequently and Silva informed Zanville of the same.

On June 5, 2007, Silva received from Zanville and Collins a petition for rulemaking relating to the FRA's track safety regulations (Track Petition). [Def. App. 12]. Then on June 6, 2007, the FRA received a fax from Collins with an attached petition for rulemaking relating to the FRA's motive, power, and equipment regulations (MPE Petition). [Def. App. 21]. The FRA responded to the HF Petition, the Track Petition, and the MPE Petition on February 22, 2008. [Def. App. 43-58]. The FRA denied all three petitions.

### III.  PROCEDURAL BACKGROUND AND PARTIES' ARGUMENTS

#### A.  The Complaint

On November 15, 2007, Plaintiffs United Transportation Board Local 418, Burlington System Division of the Brotherhood of Maintenance of Way Employes, Burlington Northern System Federation of the Brotherhood of Maintenance of Way Employes, and William Dhana, filed a complaint in this court against Defendants Joseph H. Boardman in his capacity as the Administrator for the Federal Railroad Administration (FRA), against Mary E. Peters in her capacity as Secretary of the Department of Transportation (DOT), and against the United States of America.  Dkt. # 2.  Plaintiffs request the court to enter declaratory and injunctive relief against Defendants for their alleged failures in handling the three rulemaking petitions and the FOIA request written by Zanville and Collins.

Plaintiffs specifically request the court to issue an injunction which would require the FRA to (1) "specifically and contemporaneously acknowledge in writing the receipt date for each and every petition for rulemaking received by the FRA;" (2) refer "each and every petition for rulemaking" to the appropriate safety office for timely action; (3) grant or deny "each and every petition for rulemaking" no later than six months after its receipt; (4) grant or deny the HF and Track Petitions within twenty days, and grant or deny the MPE Petition by December 7, 2007; (5) deliver to Plaintiffs every item listed in the FOIA request; and (6) file a written report to the court stating that it has complied with the injunction.  Dkt. # 2, Ex. J.  Plaintiffs also request reasonable attorney fees and other litigation costs under 5 U.S.C. § 552(a)(4)(E) for defending their alleged FOIA rights, and attorney fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

### B. Motion To Dismiss

Defendants' filed a Motion to Dismiss or, alternatively, Motion for Summary Judgment on March 5, 2008. Dkt. # 13. Defendants first argue that Plaintiffs' complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs lack standing to bring this lawsuit. Defendants note that none of the named Plaintiffs sent the petitions for rulemaking or FOIA request, and that Plaintiffs did not indicate that Zanville or Collins submitted the petitions for rulemaking and FOIA request on Plaintiffs' behalf.

Defendants also argue that Plaintiffs' complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs' claims are moot. Defendants argue that "[a]n agency's response to a petition for rulemaking moots a suit alleging a delayed response." Dkt. # 13. In addition, Defendants argue that "[w]hen a FOIA requester challenges the tardiness of an agency's response, the claim is rendered moot when the agency responds to the request." Dkt. # 13. Defendants urge that the court may also dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, or even under summary judgment standards because there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

### C. Defendants' Supplement

Defendants supplemented their motion to dismiss on March 17, 2008. Dkt. ##s 13, 15. In their supplement, Defendants additionally argue that the United States of America, as a named defendant, should be dismissed because the proper parties are only the agency heads under 28 U.S.C. § 1346 *et seq.*

### D. Plaintiffs' Resistance

Plaintiffs filed their resistance to Defendants' motion to dismiss on March 19, 2008. Dkt. # 16. Plaintiffs initially argue Defendants' motion to dismiss under Rule 12(b)(1) fails because it does not comply with the Eighth Circuit Court of Appeals' procedural requirements for an evidentiary hearing under *Osborn v. United States*, 918 F.2d 724 (8th Cir. 1990). According to Plaintiffs, Defendants are not entitled to relief under Rule 12(b)(1) no matter what the merits of their arguments without a jurisdictional hearing under *Osborn*. Plaintiffs do not address the merits of Defendants' argument that Plaintiffs lack standing because "[n]o standing issue was plead," and "the FRA's brief only suggests such a concern. The railworkers will respond if a standing issue is properly raised or at the request of the court." Dkt. # 16. Plaintiffs also fail to address Defendants' supplemented argument that the United States is not properly a party to this suit. And although Plaintiffs state they resist turning Defendants' motion to dismiss into a motion for summary judgment, Plaintiffs do not offer a reason why the court should not do so.

Plaintiffs do address the merits of Defendants' argument based on mootness, claiming it fails because Defendants cannot meet the heavy burden of persuasion to prove that their voluntary conduct will not happen again. Also regarding the merits of mootness, Plaintiffs claim well-established case law allows the district court to permit the Plaintiffs "to take discovery of key FRA personnel employees to discover and test what, if any intent, they have to comply with the APA and FOIA." Dkt. # 16.

In the conclusion of their resistance, Plaintiffs request the court to summarily deny Defendants' motion, and, if not, to permit limited discovery and thereafter schedule an *Osborn* hearing to determine the court's subject matter jurisdiction.

### E.  Defendants' Reply

Defendants filed their reply to Plaintiffs' resistance on March 26, 2008.  Dkt. # 19. Defendants reply that "[t]here is no authority supporting any procedural or substantive relief here, much less the extraordinary and unprecedented relief Plaintiffs request, including discovery and what in essence amounts to indefinite court supervision of FRA's processing of rulemaking petitions."  Dkt. # 19.  Defendants argue Plaintiffs have conceded they do not have standing to bring suit as a result of their failure to argue otherwise.  Defendants additionally argue that a jurisdictional hearing is not required under *Osborn*.  Defendants argue their burden to prove mootness is not as high as Plaintiffs suggest because this is a case alleging agency inaction and not wrongful affirmative conduct.  Finally, Defendants argue that discovery is not warranted because the court has stayed discovery pending the resolution of this motion, and the cases cited by Plaintiff do not support discovery in this case anyway.

## IV.  LEGAL STANDARDS AND ANALYSIS

### A.  Rule 12(b)(1) Motion To Dismiss For Mootness

Defendants have argued two jurisdictional bases—standing and mootness—via three possible mechanisms—Rule 12(b)(1), Rule 12(b)(6), and Rule 56—to grant Defendants the relief they seek.  Because Defendants have first requested relief under Rule 12(b)(1), and because Plaintiffs failed to address Defendants' arguments regarding standing,[3] the court

___

[3] The court has some doubts about Plaintiffs' standing to bring this suit because there is little evidence to show how Plaintiffs are connected to Zanville and Collins—the ones that wrote the FOIA request and the petitions for rulemaking.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (requiring plaintiffs to show an injury in fact, causation, and a likelihood of redress to show standing).  Thus, it may be difficult for

(continued...)

will begin its analysis by tackling Defendants' motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction based on mootness.

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). When a party amounts "a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731-32 (11th Cir. 1982)). In a facial challenge, the motion will fail if the plaintiff's complaint "contain[s] 'a short and plain statement of the grounds upon which the court's jurisdiction depends,'" therefore meeting Rule 8(a)(1). *Id.* (quoting FED. R. CIV. P. 8(a)(1)).

If the defendant "wants to make a *factual* attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." *Id.* (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). The "proper course" for the defendant to make a factual attack "is to request an evidentiary hearing on the issue." *Osborn*, 918 F.3d at 730 (citing *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)). "If necessary,

---

[3](…continued)

Plaintiffs to prove an injury in fact. Nevertheless, because Plaintiffs are all railway workers or organizations of railway workers, and because Zanville and Collins asserted "the interests of railway workers" when filing their petitions for rulemaking, the court holds Plaintiffs have standing to bring the instant suit. *See Ark. ACORN Fair Housing, Inc. v. Greystone Dev., Ltd. Co.*, 160 F.3d 433, 434 (8th Cir. 1998) (noting the requirements for organizational standing).

the district court can hold a hearing," or conduct "'any rational mode of inquiry'" to determine its jurisdiction. *Id.* (quoting *Crawford*, 796 F.2d at 929). "Once the evidence is submitted, the district court must decide the jurisdictional issue. . . ." *Id.* When deciding the issue, "'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Instead, "'[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id.* In addition, "'the plaintiff will have the burden of proof that jurisdiction does in fact exist.'" *Id.* A full trial on the merits—rather than a "'rational mode of inquiry'"—is only necessary "in instances when the jurisdictional issue is 'so bound up with the merits.'" *Id.* (quoting *Crawford*, 796 F.2d at 929).

In this case, the Defendants assert a factual attack against the court's subject matter jurisdiction under Rule 12(b)(1). Thus, the first topic the court must consider is whether Defendants had to request an evidentiary hearing to make their factual attack. Although Plaintiffs are correct that an evidentiary hearing is the "proper course," the court does not believe that Defendants had to request an evidentiary hearing, or that the court has to hold one. *See id.* ("If necessary, the district court can hold a hearing. . . ."). The district court simply has to receive evidence: "Once the evidence is submitted, the district court must decide the jurisdictional issue. . . ." *Id.* It does not matter if the district court holds an evidentiary hearing by conducting "any rational mode of inquiry," or if the district court simply receives evidence under a paper record. *Crawford*, 796 F.2d at 929. Holding an evidentiary hearing is within the district court's discretion. Because a hearing is

discretionary, the court does not see how a defendant's failure to request an evidentiary hearing necessarily precludes the court from considering Defendants' Rule 12(b)(1) motion. *See Titus*, 4 F.3d at 593 (noting the defendant should *request* a hearing, but not indicating a hearing is mandatory). Moreover, a court could always pursue the "proper course" by holding an evidentiary hearing even if a defendant failed to request one. And in this case, because of Plaintiffs' argument, Defendants state in their reply that they would agree to an evidentiary hearing if the court felt it was necessary. Thus, even if making a request for an evidentiary hearing was a necessary prerequisite to a factual attack under Rule 12(b)(1), Defendants met that prerequisite by essentially requesting a hearing in their reply.

Nevertheless, the court does not believe an evidentiary hearing is necessary in this case. It is undisputed that Defendants responded to the FOIA request and the petitions for rulemaking. Defendants' responses are precisely the bases for their argument that Plaintiffs' claims are now moot. The paper record contains all the evidence the parties' marshal for and against the Defendants' instant motion. Therefore, the court does not believe an evidentiary hearing is necessary to rule on whether Plaintiffs' claims are moot under Rule 12(b)(1).

"Questions of mootness are matters of subject matter jurisdiction. . . ." *Charleston Housing Auth. v. U.S. Dep't of Agriculture*, 419 F.3d 729, 739 (8th Cir. 2005). "Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000); *see Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (stating an action becomes moot where it "no longer present[s] a case or controversy under Article III"). "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a chance in circumstances . . . and a federal court can no longer grant effective relief,' the

case is considered moot." *Haden*, 212 F.3d at 469 (quoting *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994)).

Thus, the court must determine whether the issues in Plaintiffs' complaint have "los[t] their life" and whether the court can grant effective relief. *Beck*, 18 F.3d at 605. The court will first analyze the issues concerning the petitions for rulemaking. In this case, and regarding the alleged violations concerning Zanville and Collin's three petitions for rulemaking, Plaintiffs' complaint requests the court to order the FRA to rule on the petitions for rulemaking. Plaintiffs' complaint also asks the court to enter a declaratory judgment finding that Defendants failed to "properly receipt" the three petitions, failed to refer the petitions to the appropriate safety department, and failed to grant or deny the petitions within six months. In addition, Plaintiffs' complaint requests the court to order the FRA to properly receipt, refer, and rule on "each and every petition for rulemaking received by the FRA." In other words, Plaintiffs want relief not only for the alleged violations concerning Zanville and Collin's three petitions for rulemaking, but also relief for, as the Defendants state, "hypothetical, yet-to-be-filed rulemaking petitions." Dkt. # 19.

Concerning the hypothetical rulemaking petitions, Defendants argue the possibility of dilatory conduct in the future does not turn an otherwise moot matter into a live controversy. Defendants also argue that Plaintiffs fail to cite any authority that permits the court to order the relief it seeks concerning the future rulemaking petitions. The court agrees with Defendants, for a related reason, that Plaintiffs' request for the court to order the FRA to receipt, refer, and rule on "each and every petition for rulemaking" is not justiciable. It is not justiciable because the claim is not ripe. *See Action on Smoking & Health v. Dep't of Labor*, 28 F.3d 162, 165 (D.C. Cir. 1994) ("Petitioner's claim of future unreasonable delay is not yet ripe for judicial review. . . ."). While "the proper recourse

14

for a party aggrieved by delay that violates a statutory deadline is to apply for a court order compelling agency action," *Kinion v. United States*, 8 F.3d 639, 644 (8th Cir. 1994), that does not mean Plaintiffs can request the court to compel agency action regarding yet-to-be-filed petitions for rulemaking.

Concerning the HF, Track, and MPE Petition issues, the court also agrees with Defendants that these issues are not justiciable. The First Circuit Court of Appeals recently held that the petitioner's request "to compel the agency to act on the petition for rulemaking" was moot because the "DOT finally acted on the petition by denying it." *In re City of Fall River*, 470 F.3d 30, 32-33 (1st Cir. 2006). Other courts have ruled similarly. *See St. Lawrence Seaway Pilots' Ass'n v. Collins*, No. Civ.A. 03-1204(RBW), 2005 WL 1138916, at *1 (D.D.C. May 13, 2005) (dismissing plaintiff's claim as moot because "the rulemaking at issue had been completed"); *Action on Smoking & Health*, 28 F.3d at 298 ("Petitioner's claim that OSHA unreasonably delayed a rulemaking on ETS is mooted by the Notice of Proposed Rulemaking on Indoor Air Quality Contaminants that the agency issued. . . ."); *see also In re Int'l Union*, 231 F.3d 51, 52-53 (D.C. Cir. 2000) (finding plaintiffs' complaint that agency had unreasonably delayed its rulemaking process was moot after agency published notices of proposed rulemaking six months after complaint was filed). While the United States Supreme Court has not directly addressed whether an agency's response to a rulemaking petition moots a plaintiff's complaint based upon delay, *see Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 344 n.2 (1984) ("The portion of respondent's complaint challenging the Secretary's inaction on their rulemaking request was held moot by the Court of Appeals. Respondents did not cross-petition for certiorari review of this issue, and we therefore have no occasion to consider it." (citation omitted)), and even though there is no mandatory authority from the Eighth Circuit addressing the issue, the court is persuaded by the reasoning of the First Circuit Court of

Appeals and other courts that Plaintiffs' claim concerning the rulemaking petitions is moot. *See City of Fall River*, 470 F.3d at 33 ("Insofar as the petition sought to compel the agency to act on the petition for rulemaking, the request for mandamus is *dismissed* as moot." (emphasis in original)). Plaintiffs filed their complaint asking the court to order the FRA to grant or deny the rulemaking petitions. It is undisputed that Defendants have ruled on each of the three petitions, and the court is not aware of any effective relief that the court can grant. As a result, Plaintiffs' APA claim asking the court to order the Defendants to rule on the petitions for rulemaking has "los[t] its life," and is moot. *Beck*, 18 F.3d at 605.

The same can be said for Plaintiffs' FOIA claim. Plaintiffs' complaint requested the court to order Defendants to answer Zanville's FOIA request. Defendants provided their answer to the FOIA request on February 5, 2008. The Fifth Circuit Court of Appeals recently recognized that when an agency provides information relevant to a FOIA request, such agency action moots any claim related to the delayed delivery of the information. *See Ayanbadejo v. Chertoff*, 517 F.3d 273, 278 (5th Cir. 2008) ("Although the Ayanbadejos argue that the district court erred in dismissing their FOIA claim as moot, the USCIS did produce the Ayanbadejos' immigration record to their counsel pursuant to their FOIA request, making this claim moot."). Plenty of other courts hold likewise. *Tri-Valley Cares v. Dep't of Energy*, 203 Fed. Appx. 105, 107 (9th Cir. 2006) ("Eventual production, 'however belatedly, moots FOIA claims.'" (quoting *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002))); *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 536 (7th Cir. 2005) ("In general, '[o]nce the government produces all the documents a plaintiff requests, her claim for relief under the FOIA becomes moot.'" (quoting *Anderson v. U.S. Dep't of Health & Human Servs.*, 3 F.3d 1383, 1384 (10th Cir. 1993))); *Regional Mgmt. Corp., Inc. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999) ("It

is undisputed that a challenge to a particular denial of a FOIA request becomes moot if an agency produces the requested documents.").

Sometimes, however, an exception to the mootness doctrine applies in FOIA cases where there is "evidence of bad faith or a recurring pattern of FOIA violations" by the agency. *Tri-Valley Cares*, 203 Fed. Appx. at 107. Upon reviewing the evidence submitted in this case, the court does not believe an exception is warranted. The Plaintiffs, after all, only based their FOIA claim on one FOIA request. Thus, there is no evidence of a recurring pattern of FOIA violations. Also, the record does not indicate bad faith. On the same day the Defendants received Zanville's FOIA request, the Defendants opened a file number and notified Zanville that "the FRA is currently experiencing a high number of FOIA requests and is addressing backlogged requests with all due diligence on a first-in, first-out basis. Your request will be addressed in the order it was received. We regret any inconvenience caused by the delay." Dkt. # 13, Ex. O. Although Defendants finally responded to the FOIA request almost a year later, nothing indicates the Defendants exercised bad faith in responding. In fact, the evidence indicates good faith by producing hundreds of pages of documents and detailed responses even after the FRA denied Zanville's fee waiver request. Thus, no exception to the mootness doctrine applies, and Plaintiffs' FOIA claim is moot. *See Ayanbadejo*, 517 F.3d at 278.

In coming to the conclusion that Plaintiffs' APA and FOIA claims are moot, the court is aware that "[d]efendants who argue mootness due to changed circumstances based on their own behavior face a heavy burden." *Charleston Housing Auth.*, 419 F.3d at 740. The court, however, is convinced that the persuasive authority and circumstances of this case indicate Defendants have met that burden. In addition, as Defendants point out, it is impossible for Defendants to revert to dilatory behavior regarding Zanville and Collin's FOIA request and petitions for rulemaking. Thus, Plaintiffs' concern that Defendants will

continue to revert to dilatory behavior concerning the FOIA request and petitions for rulemaking is unrealistic.

The court is aware that Plaintiffs feel the Defendants' responses to the FOIA request and petitions for rulemaking are inadequate or somehow unjust. Plaintiffs remedy in such a case is to administratively appeal the agency's FOIA response, and upon final agency action, Plaintiffs may then appeal for judicial review. *See* 49 C.F.R. § 7.21 (noting the "Procedures for Appealing Decisions Not to Disclose Records and/or Waive Fees" under FOIA). Regarding the petitions for rulemaking, Plaintiffs' remedy is to appeal the denial of the petitions to the appropriate court. *See* 28 U.S.C. § 2342(7) (indicating the court of appeals "has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final agency actions. . . ."); *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1288 (D.C. Cir. 2007) ("[W]hen no direct-review statute applies, parties aggrieved by Executive agency denials of petitions for rulemaking have routinely gone first to district courts, and then taken appeals from final district court judgments. . . .").

## B. *Claims For Attorney Fees And Costs*

Plaintiffs' complaint requested the court to award general attorney fees and costs under the EAJA, and specific attorney fees and costs for the FOIA claim under 5 U.S.C. § 552(a)(4)(E). The court is tempted to conclude that these issues are moot as a result of the underlying claims being moot. There is, however, some authority to the contrary. *See GMRI, Inc. v. E.E.O.C.*, 149 F.3d 449, 451 (6th Cir. 1998) ("Although plaintiff's claim for production of information [under the FOIA] is moot, its motion for attorney fees and costs is not."); *Or. Natural Desert Ass'n v. Lohn*, 522 F. Supp. 2d 1295, 1298 (D. Or. 2007) (finding that the court had subject matter jurisdiction over plaintiffs' claim for EAJA

fees because, even though the underlying action had since become moot, "at the time the plaintiffs incurred the fees, this Court had jurisdiction over the case"). As a result, the court will determine the propriety of fees and costs under the standards for summary judgment.[4] *See Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 867-68 (8th Cir. 2008) (stating the summary judgment standards under Federal Rule of Civil Procedure 56).

In determining whether to grant FOIA "attorney fees and other litigation costs," the court must determine whether Plaintiffs "substantially prevailed" on their FOIA claim. 5 U.S.C. § 522(a)(4)(E). Plaintiffs received a response to their FOIA request after the complaint was filed. In such a case, Plaintiffs "will have substantially prevailed if [they] demonstrate[] that the prosecution of the lawsuit was reasonably necessary to obtain [the] requested information, and that the existence of the lawsuit had a causative effect upon the release of the information." *GMRI, Inc.*, 149 F.3d at 451-52. Plaintiffs did not attempt to make this argument in their resistance, and regardless, the court does not believe a genuine issue of material fact exists as to whether the complaint caused the FRA to respond to Zanville's FOIA request. As noted above, Defendants immediately notified Zanville that it would process his FOIA request on a first-in, first-out basis, and that delay may occur as a result. There is nothing to show that Defendants responded to Zanville's FOIA request as a result of the complaint being filed in this case. In fact, the FRA was served with the complaint on December 13, 2007, three days after the FRA informed Zanville that

---

[4] Defendants specifically requested that the court dismiss all of Plaintiffs' claims under either Rules 12(b)(1), 12(b)(6), or 56. Plaintiffs have asserted no reason why the court should not treat any portion of Defendants' motion to dismiss as a motion for summary judgment, and the court believes it is proper to do so given the evidence submitted by both parties. *See* Dkt. ## 2, 13; FED. R. CIV. P. 12(d) (requiring a court to turn a Rule 12(b)(6) motion into a Rule 56 motion when "matters outside the pleadings are presented to and not excluded by the court").

it wanted him to prioritize his FOIA request so the FRA could process it. In addition, Fashouer's declaration and letter makes it clear that he did not know Plaintiffs had filed their complaint when he sent the letter to Zanville on December 10th. Dkt. # 13, Ex. T. Under these circumstances, the court finds as a matter of law that Plaintiffs are not entitled to attorney fees and costs under the FOIA.

Similarly, the court does not believe a genuine issue of material fact is present as to whether Plaintiffs are a "prevailing party" under the EAJA. The United States Supreme Court has defined a "prevailing party" as one which "has been awarded some relief by the court." *Buckhannon Bd. & Care Home, Inc. v. W.V. Dept. of Health & Human Resources*, 532 U.S. 598, 603 (2001). There is no doubt Plaintiffs have not received any relief by the court in this case and, therefore, they are not prevailing parties under the EAJA. 28 U.S.C. § 2412. Thus, the court denies Plaintiffs' claim for attorney fees and costs under the EAJA as well.

## C. Remaining Issues

There are two remaining issues: Plaintiffs' request for limited discovery to determine the FRA's intent in complying with the APA and FOIA, and Defendants' supplemented motion to dismiss the United States of America as a defendant. Plaintiffs' request for discovery is denied. The court has already determined, in a previous order, that discovery is stayed until Defendants' motion to dismiss is ruled upon. Dkt. # 18. Moreover, the court has now determined that an *Osborn* hearing is unnecessary and that Plaintiffs' APA and FOIA claims are moot. Thus, discovery is not warranted or necessary.

Regarding Defendants' supplemented motion to dismiss the United States of America as a defendant, the court does not need to rule on the request. All claims against

Defendants have been adjudicated in Defendants' favor. Thus, dismissing the United States of America as a defendant is not necessary. Furthermore, to the extent that Defendants' current motion also requested alternative relief under Rules 12(b)(1), 12(B)(6) and 56, the court need not analyze the alternative arguments because all issues have been resolved in Defendants' favor.

## V. CONCLUSION

Plaintiffs' **APA and FOIA claims are moot**, and are **dismissed under Rule 12(b)(1)**. The court also **grants summary judgment** to Defendants concerning Plaintiffs' claims **for attorney fees and costs** under the EAJA and the FOIA. All other issues (except standing) either need not be addressed or have been decided in Defendants' favor.

**IT IS SO ORDERED.**

**DATED** this 24th day of June, 2008.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA